UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES ex rel. SIOBHAN FITZGERALD; STATE OF NEW YORK ex rel, SIOBHAN FITZGERALD; and SIOBHAN FITZGERALD individually | CIVIL ACTION NO. CV 12-1170 |
| Plaintiffs | |
| v. | |
| BANK OF AMERICA, and its subsidiaries, | |
| Defendants. | |

**FIRST AMENDED COMPLAINT**

Plaintiff-Relator SIOBHAN FITZGERALD ("Relator"), by and through her undersigned attorneys, BRIAN MAHANY and MAHANY & ERTL, and on behalf of the United States of America, alleges as follows for her Complaint against Defendants BANK OF AMERICA and its subsidiaries.

## I. INTRODUCTION

1.  Plaintiff-Relator SIOBHAN FITZGERALD brings this qui tam action pursuant to 31 U.S.C. §3729, et seq. to recover damages and civil penalties from Defendants Bank of America and its subsidiaries, (hereinafter "Defendants") on behalf of the United States of America for violations of securities laws and the Patriot Act thereby causing false claims and damages to the United States Treasury.

2.  Relator alleges that Defendants' improper practices resulted in regulatory violations that if known to the government would have denied Defendants participation or continued participation in various economic relief programs.

3. Defendants made false statements in certifications required to qualify Defendants for participation and continued participation in the Troubled Asset Relief Program ("TARP"), Home Affordable Modification Program ("HAMP"), and other federal funding programs. While flagrantly violating multiple government regulations and laws, Defendants simultaneously took almost $.2 *trillion* ($163,000,000,000.00) in taxpayer monies and guarantees.

4. Relator seeks to recover treble damages and civil penalties arising from Defendants knowing and material breach of its agreements with the Treasury and its violation of the False Claims Act and the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA").

## II. JURISDICTION AND VENUE

5. This court has jurisdiction over the subject matter of this action: (i) pursuant to 31 U.S.C. §3732, which specifically confers jurisdiction on this Court for actions brought pursuant to 31 U.S.C. §§3729 and 3730; (ii) pursuant to 28 U.S.C. § 1331, which confers federal subject matter jurisdiction; and (iii) pursuant to 28 U.S.C. § 1345, because the United States is a plaintiff.

6. Relator Fitzgerald has direct and independent knowledge of the information upon which the allegations are based and has voluntarily provided notice of this action to the government before filing this *qui tam* action.

7. Relator Fitzgerald has previously provided information about these allegations to the Internal Revenue Service and to the Securities and Exchange Commission. She issued disclosure statement to each of the federal agencies and met with agency personnel.

8.     Simultaneous with the service of the original complaint upon the Government Plaintiffs, Relator Fitzgerald provided a relator statement. Relator Fitzgerald's disclosure statement is supported by material evidence.

9.     Under 31 U.S.C. § 3730 (e), there has been no statutory relevant public disclosure of the allegation or transactions in this Complaint with respect to which Plaintiff is not an "original source," and all material information relevant to this Complaint was provided to the United States Government prior to filing his Complaint pursuant to 31 U.S.C. § 3730(e)(4)(B).

10.    Defendants can be found in, is authorized to transact business in, and is now transacting business in this District. In addition, acts proscribed by 31 U.S.C. §3729 have occurred in this District.

11.    Venue is proper in the District because Defendants conducts business in this District and acts giving rise to this action originated within this District.

### III. PARTIES

12.    Plaintiff-Relator Fitzgerald is a resident of the state of Massachusetts. Relator brings this action on her own behalf and on behalf of the federal government pursuant to 31 U.S.C. §3730(b)(1) for false and fraudulent claims submitted to federally-funded programs, including the United States Treasury, the Troubled Assets Recovery Program, and any other relevant federal programs and agencies.

13.    Defendants Bank of America and its subsidiaries ("BOA"), at all times material to this Complaint, acted directly or through its agents and employees who, at all times, were acting within the scope of their agency and employment.

14. Since 2008, Bank of America availed itself of federal assistance in the form of TARP, stimulus monies, HAMP, and other the American Recovery and Reinvestment Act of 2009 ("ARRA") dollars.

15. Plaintiff-Relator is a Harvard graduate and a Certified Fraud Examiner. She works in the finance industry. She worked for Bank of America from late 2009 to the fall of 2010.

16. In her capacity as a Bank of America employee, Relator obtained direct knowledge, information, and belief that Defendants engaged in schemes to defraud the United States Treasury, TARP, and other federal programs through concealing their as of trading practices and their inadequate compliance with the Patriot Act.

17. Further, in the course of her employment with Defendants, Relator Fitzgerald obtained direct knowledge, information, and belief that Defendants created, submitted, and accepted reimbursement for false claims, in whole or in part by the United States government. Relator Fitzgerald is an original source of this information to the governments, and she has initiated this *qui tam* action against the Defendants on her own behalf and on behalf of the United States government pursuant to 31 U.S.C. §3730(b)(l).

18. Upon information and belief, the unlawful practices alleged in this Complaint were well established and/or ratified at the highest corporate levels of Defendants (or their successors) and subsidiaries and affiliates owned, operated, dominated and controlled by BOA.

19. Defendants are liable in this action because of the actions of their own employees and agents and/or because Defendants are legally responsible for the actions of their predecessors, subsidiaries and affiliates.

# IV. TARP AND THE IMPORTANCE OF ACCURATE FINANCIAL INFORMATION TO THE GOVERNMENT

20.     During all time periods relevant to this Complaint, Bank of America was (and remains) one of the largest banks in the United States. Accurate balance sheets are a critical financial indicator of the financial health of Defendants. The Federal Government, through their many agencies, rely on Defendants, and others, to provide accurate information about their financial health so that the Federal Government can judge how to best ensure a stable economy and to protect the investments of the government, the taxpayers, and shareholders in Defendants companies. The federal government depended on Defendants to fairly, accurately, and competently report their assets and liabilities.

21.     Knowing that government intervention was needed to prevent further erosion of the American economy, Congress enacted the Emergency Economic Stabilization Act of 2008 ("ESSA"). This legislation authorized Treasury to create and operate the TARP program.

22.     Section 101 of ESSA requires the Secretary of the Treasury to take "such steps as necessary to prevent unjust enrichment of financial institutions" receiving TARP funds.

23.     Section 116 of ESSA requires the Comptroller General of the United States to "commence ongoing oversight" of TARP to insure among other things the protection of taxpayers and to insure recipients have "provided stability or prevented disruption to the financial markets."

24.     ESSA and the subsequent regulations require TARP recipients to make a number of reports and disclosures to an alphabet soup of government agencies including, but not limited to the Special Inspector General of the Troubled Asset Relief Program ("SIGTARP"), the

Secretary of the Treasury, the Comptroller of Currency, the Federal Reserve, the Federal Deposit Insurance Corporation and the Internal Revenue Service.

25. Beginning in late 2008, the United States provided a total of $45 billion to BOA pursuant to TARP. It also extended guarantees of $118 billion. The government did so because it decided that the costs and potential damage to the economy of allowing BOA to fail were simply too great.[1]

## V. CIVIL STATUTES TO COMBAT FINANCE INDUSTRY FRAUD

### The Financial Institutions Reform, Recovery And Enforcement Act Of 1989 ("FIRREA")

26. Congress enacted the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") to reform the federal banking system. In doing so, it endorsed and greatly expanded the government's authority to assess civil money penalties for violations of certain predicate offenses that affect financial institutions and certain government agencies. See 12 U.S.C. sec. 1833a(e).

27. Civil money penalties may also be assessed, under FIRREA, for recklessly engaging in an unsafe or unsound practice or a breach of fiduciary duty that results in loss to the institution or gain to the individual. In addition, FIRREA expanded the government's authority to assess penalties against any "institution-affiliated party," including any officer, director, employee, controlling stockholder, agent, and any shareholder who participates in the conduct of the affairs of the institution, as well as any independent contractor who knowingly or recklessly

---

[1] Bank of America was so large that it was just one of two institutions deemed "too big to fail" and thus qualified for Treasury's Target Investment Program.

participates in a law or regulation violation or unsafe or unsound practice that causes more than a minimal financial loss to the institution.

28. FIRREA also increased the dollar amount of penalties through a three tiered framework. A first-tier penalty of up to $5,000 per day may be assessed for any violation of law, rule or regulation, final order, condition imposed in writing or written agreement. A second-tier fine of up to $25,000 per day may be assessed for any violation of law or regulation or for any reckless unsafe or unsound practice or for a breach of fiduciary duty that has caused loss to the institution or gain to the individual. A third-tier fine of up to $1,000,000 per day may be assessed for any knowing or reckless violation of law or regulation, participation in an unsafe or unsound practice or breach of fiduciary that causes substantial loss to the institution or gain to the individual.

29. In addition, fines of up to $25,000 per day may be assessed for any violation of the Bank Holding Company Act of 1956, as amended, and for failure to make, submit or publish required regulatory reports or for the filing of false or misleading reports.

**The Fraud Enforcement Recovery Act**

30. In 2009, Congress passed the Fraud Enforcement Recovery Act (FERA), an act to improve the enforcement of securities fraud, financial institution fraud, and other frauds related to Federal assistance and relief programs, for the recovery of funds lost to these frauds, and for other purposes.

31. On May 20, 2009, FERA was signed into law.

32. FERA changed the definition of a financial institution to include mortgage lending businesses, which are defined as organizations which finance or refinance any debt secured by an interest in real estate, including private mortgage companies and any subsidiaries of such organizations, and whose activities affect interstate or foreign commerce.

33. The definition of fraud against the United States (18 USC Sec. 1031), which previously only covered fraud in government procurement and contracts and services was amended by FERA to include a wider range of government involvement, including grants under the American Recovery and Reinvestment Act of 2009, transactions made under the Troubled Assets Relief Program, and "any other form of Federal assistance."

34. FERA also defined "proceeds" as any property derived from or obtained or retained, directly or indirectly, through some form of unlawful activity, including the gross receipts of such activity.

35. FERA expands the grounds for liability under the False Claims Act (FCA), 31 USC§§ 3729-3733. It does so by clarifying that the FCA covers false claims for government money or property: (1) whether or not the claim was presented to a government employee or official; (2) whether or not the government has custody of the money or property; and (3) whether or not the person or entity specifically intended to defraud the government.

36. FERA accomplishes the above by amending the grounds for liability and altering (and adding) key definitions to the statute. After the amendments, the FCA may be enforced against any person or entity that "knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim." The statute's definition of "claim" includes false records or claims made to the government or to contractors or other recipients of federal funds. Further, the new definition of "material" includes statements or records "having a

natural tendency to influence, or be capable of influencing, the payment or receipt of money or property."

37. FERA revises "claim" in the False Claims Act to include "any request or demand, whether under a contract or otherwise, for money or property and whether or not the United States has title to the money or property." This definition of "claim" includes any request or demand presented to the United States or "made to a contractor, grantee, or other recipient" if "the money or property is to be spent or used on the Government's behalf or to advance a Government program or interest" and the United States provides or reimburses any portion of the money or property.

38. The legislative history of FERA indicates the law was intended to "protect from fraud the federal assistance and relief funds expended in response to our current economic crisis." S. Rep. No. 110-10, at 4 (March 23, 2009). By definition, this includes TARP.

## The False Claims Act

39. The federal False Claims Act provides liability for any person (i) who "knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval," or (ii) who "knowingly makes, uses or causes to be made or used, a false record or statement material to a false or fraudulent claim." 31 U.S.C. sec. 3729(a)(1)(A)-(B).

40. The statute states in in pertinent part, that:
   a. Liability for certain acts.
      (1) In general. Subject to paragraph
      (2), any person who—

>> (A) knowingly presents, or causes to be presented, to an officer or employee of the United States Government or a member of the Armed Forces of the United States a false or fraudulent claim for payment or approval;
>
>> (B) knowingly makes, uses, or causes to be made or used, a false record or statement to get a false or fraudulent claim paid or approved by the Government;
>
>> (C) conspires to defraud the Government by getting a false or fraudulent claim allowed or paid; is liable to the United States Government for a civil penalty ... plus three times the amount of damages which the Government sustains because of the act of that person.
>
> b. Definitions. For purposes of this section-
>
>> (1) the terms "knowing" and "knowingly -
>
>>> (A) mean that a person, with respect to information--
>
>>>> (i) has actual knowledge of the information;
>>>>
>>>> (ii) acts in deliberate ignorance of the truth or falsity of the information; or
>>>>
>>>> (iii) acts in reckless disregard of the truth or falsity of the information, and no proof of specific intent to defraud is required.

31 U.S.C. § 3729(a) and (b).

41. The False Claims Act imposes liability on any person who knowingly presents or causes a false or fraudulent claim to be presented for payment, or to make or use a false record or

statement to get a false or fraudulent claim paid by the government. 31 U.S.C. §3729(a)(l)(A) and (B).

42. The False Claims Act is violated not only by a person who makes a false statement or a false record to get the government to pay a claim, but also by one who engages in a course of conduct that causes the government to pay a false or fraudulent claim for money.

## VI. FACTUAL ALLEGATIONS

### Overview

43. Relator Fitzgerald alleges Defendants knowingly, willfully, and intentionally defraud the government by engaging in "as of" trading for preferred customers, by failing to adhere to Know Your Customer rules and regulations, and for failing to withhold required amounts from the accounts of foreign nationals.

44. Numerous state and federal statutes and regulations serve to prevent fraud and abuse in the finance industry. Defendants violated these statutes and regulations and have thereby defrauded the government plaintiffs of millions of dollars.

45. Relator worked at Bank of America in two capacities. She was employed as part of the team that absorbed Merrill Lynch accounts into the Defendants and she later worked for Bank of America in corporate governance.

### "AS OF" TRADING

46. Defendants engaged in a federally prohibited practice known as "as of" trading. "As of" trading consists of allowing selected brokers and entities to back date trades three or more days. Usually, Defendants allow "as of" trading to occur over holiday weekends.

47. The Defendants have engaged in the prohibited practice before. In 2005, the Defendants agreed to a $375 million Market-Timing and Late Trading settlement with the SEC. Late trading is a term synonymous with "as of" trading.

48. On July 30, 2012, Relator first became aware that Defendants were again engaging in the same prohibited and illegal "as of" trading. She learned this when she participated in a meeting with BOA employees Phillip D. White (Vice President) and Patrick Donovan (chief compliance officer) wherein White mentioned to Donovan Defendants' as of trading practice. Donovan said he did not want a repeat of "2005" and he wanted to know if there were written agreements or a paper trail documenting the practice. White stated the bank allowed handshake deals in lieu of putting agreements in writing for as of trading. White said prior to the 2005 settlement, such agreements had been in writing. Donovan stated that he was glad it had not been brought up on a conference call with "legal" (a reference to BOA's legal department).

49. At the same meeting, White had a list of approximately 12 to 20 participants in the "as of" trading scheme. The list included Penson Financial, Merrill Lynch, and Boston Financial Data Services.

50. On August 5, 2010, Patrick Donovan told the Defendants' Global Capital Management Policy Working Group that there was no advantage to late trading a mutual fund - a false statement.

51. Late traders steal additional days of interest for time periods when they are not invested in interest earning securities. Those shareholders who trade properly suffer the loss and the cost of the late trades.

52. Even after Donovan falsely stated that there was no advantage to such late trades, the Policy Working Group correctly decided to eliminate its existing (and improper) late trading policy statement.

53. Despite the elimination of the policy, the late trading continued.

54. On September 7, 2010, Fidelity's Investment Pricing Team asked the bank in an email whether State Street Global Services, a transfer agent, would be clearing late trades for Columbus Day (a three day holiday) and Veteran's Day (a one day holiday).

55. Fidelity followed up on the question with another email on September 13, 2010.

56. About twenty minutes later, Shawn M. Alarie (BOA project manager) sent an email stating that Bank of America and Columbia Management[2] don't usually make their late trading decisions until the month end prior to the month of the actual holiday.

57. About forty minutes later, Fidelity sent an email to two State Street Global Services personnel, a Columbia Management Group contractor employee, and a Bank of America Global Capital Management employee if they plan to accept late trades for the same holidays.

58. The next day, on September 14, Bank of America circulated emails internally asking if anyone knew the answer to Fidelity's questions about late trading.

59. Senior Analyst Holly German responded by email to BOA managers Barry Vallan, Patrick Campbell, and Phillip White and provided details of Defendants' late trading practice. German specifically referenced "as of" agreements in her description and relayed the process as it had occurred with Columbia.

---

[2] Columbia Management was a subsidiary of BOA until it was sold on or about June of 2010.

60. In an email at 9:01 AM, Phillip White says Bank of America does not accept late trades.

61. On September 14, 2010, German reiterates in a follow up email that trades received on Columbus Day or Veterans Day would be treated as if they had been received on the prior business day, so long as there was a valid as of agreement in place with the broker. German expressed frustration that White did not understand that trades could not be booked on a holiday.

62. Relator worked closely with German and learned that "as of" trading had been in place for years. Upon information and belief, the late trading practices continue through the writing of this complaint..

63. The improper practices Relator personally witnessed were national in scope and standard operating procedures.

**KNOW YOUR CUSTOMER VIOLATIONS**

64. Through her employment at BOA, Relator learned that Defendants were failing to verify account holder identity in accordance with the Patriot Act. Specifically, Defendants failed to perform adequate "Know Your Customer" (KYC) procedures.

65. Bank of America concealed the Patriot Act violations by assigning foreign nationals false social security numbers that were blocked from review by the Defendants' own compliance and anti-money laundering personnel.

66. IRS and the Treasury Department's Financial Crimes Enforcement Network regulations require Defendants to verify the identity the identity of foreign account holders.

67.     Relator raises these Patriot Act violations not for the potential huge tax loss suffered by American taxpayers[3] but because such violations are material to false certifications made in connection with TARP. As noted above, in order to remain eligible to receive and enjoy TARP funds, the recipient of such funds must be in compliance with the laws of the United States, must not be unjustly enriched, must act in way to protect taxpayers and must promote stability in the financial markets.

**VII. CLAIMS FOR RELIEF**

**COUNT ONE**

**False Claims Act, 31 U.S.C. §3729 (a)(l)(A)**

Presenting or Causing to Be Presented False Claims

68.     Plaintiff-Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

69.     This is a civil action brought by Relator Fitzgerald in the name of the United States under the *qui tam* provisions of 31 U.S.C. §3730 for Defendants' violation of 31 U.S.C. §3729 *et seq.*

70.     Defendants concealed and conceal from the United States Government the fact that it has engaged in the submission of false claims to the government and has been unjustly enriched. Defendants further knowingly, or acting in reckless disregard of the truth, made false

---

[3] Relator acknowledges that the False Claims Act excludes claims made under the Internal Revenue Code 31 USC sec. 3729(d).

statements and claims in connection with their participation in the TARP and other stimulus programs.

71. By virtue of the above acts, Defendants knowingly presented or caused to be presented, false or fraudulent claims to the United States Government for payment or approval, and continues to do so at the present time, directly or indirectly, to officers, employees, or agents of the United States, in violation of 3 1 U.S.C. § 3729(a)(1)(A).

72. At all times relevant and material to this Complaint, Defendants knew that its business practices would necessarily result in material false claims, records or statements being presented, paid and/or subsidized by the United States through the US Treasury, TARP and other government programs. By its conduct, Defendants knowingly caused false statements and records to be made or used, and material facts to be omitted, to induce the United States Government to approve, subsidize and/or pay false and fraudulent claims.

73. As Defendants' business practices extend throughout the country in states where government reimbursement rates make such fraud lucrative for the Defendants, the amounts of the false or fraudulent claims submitted to the United States Government were material.

74. The United States Government, being unaware of the falsity or fraudulence of the statements, records, or claims caused by, made, and submitted by Defendants, have funded in part, approved, and/or paid the false or fraudulent claims. But for the knowing and intentional conduct of Defendants, the false claims would not have been submitted. But for the knowing and intentional conduct of Defendants, the United States would not have funded the false claims.

75. From at least 2006 to the date of this Complaint, by reason of the conduct described above, the government has been damaged.

76. Pursuant to the False Claims Act, 31 U.S.C. sec. 3729 (a)(1)(A), Defendants are liable to the United States under treble damage and civil penalty provisions for a sum of not less than $5,500 and not more than $11,000 for each false or fraudulent claim herein, plus treble the amount of such sums that the government has suffered because of Defendants actions.

## COUNT TWO

### False Claims Act, 31 U.S.C. §3729 (a)(l)(B)

Creation or Use of False Statements or Records Material to a False Claim

77. Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

78. This civil action is brought by Relator Fitzgerald in the name of the United States under the *qui tam* provisions of 31 U.S.C. §3730 for Defendants' violations of 31 U.S.C. §3729 (a)(l)(B).

79. By virtue of the above-described acts, among others, Defendants knowingly created or caused to be created, made, or used material false records or statements to get false claims to be paid, funded, guaranteed and/or subsidized by the United States.

80. At all times relevant and material to this Complaint, Defendants knew that its business practices would necessarily result in the creation, making, or use of material false records or statements to get false claims to be paid and/or subsidized by the United States through the US Treasury, TARP and other government programs. By its conduct, Defendants knowingly created and caused to be created material false statements and records to be made or

used, and material facts to be omitted, to induce the United States Government to approve, subsidize and/or pay false and fraudulent claims.

81.     The United States Government, being unaware of the falsity or fraudulence of the statements, records, or claims which Defendants caused to be made, used, or presented, approved, subsidized and/or paid the false or fraudulent claims for bogus representations of their financial health.

82.     Because Defendants' business practices extend throughout the country, the amounts of the false or fraudulent claims submitted to and/or subsidized by the United States Government were material.

83.     From at least 2004 to the date of this Complaint, by reason of the conduct described above, the government has been damaged in an amount that is believed to be in excess of several millions of dollars as a result of misuse of federal bailout money.

84.     Pursuant to the False Claims Act, 31 U.S.C. sec. 3729 (a)(1)(B), Defendants are liable to the United States under treble damage and civil penalty provisions for a sum of not less than $5,500 and not more than $11,000 for each false or fraudulent claim herein, plus treble the amount of such sums that the government has suffered because of Defendants actions.

## COUNT THREE

### Civil Penalties Under FIRREA (18 U.S.C. sec. 1833a)

85.     Relator restates and incorporates each and every allegation above as if the same were fully set forth herein.

86. For purposes of fraudulently obtaining and retaining money from the TARP and other economic relief programs, Defendants knowingly, or acting in deliberate ignorance and / or with reckless disregard of the truth, executed a scheme and artifice to defraud, using instrumentalities of interstate commerce and wire in violation of 18 U.S.C. secs 1341 and 1343.

87. Defendants have gained substantial profits from these activities and schemes.

88. Accordingly, Defendants are liable for civil penalties to the maximum amounts authorized by 12 U.S.C. sec. 1833a.

## PRAYER

WHEREFORE, Plaintiff acting on her own behalf and on behalf of the United States demands and prays that this Court enter judgment against Defendants as follows:

1. In favor of the United States and against Defendants jointly and severally in an amount equal to three times the amount of damages the United States has sustained because of Defendants' actions, plus a civil penalty of not less than $5,000 and not more than $11,000 for each violation of 31 U.S.C. § 3729 et seq.;
2. In favor of the Plaintiff for the maximum amount allowed as a Relator's share pursuant to 31 U.S.C. § 3730( d);
3. In favor of Plaintiff against Defendants jointly and severally for all reasonable expenses, attorneys' fees and costs incurred by Plaintiff pursuant to 31 U.S.C. § 3730(d); and,
4. On Count Three (FIRREA), a judgment against the Defendants, jointly and severally, for civil penalties to the maximum amount permitted by statute.
5. Such other relief as this Court deems just and appropriate.

**TRIAL BY JURY**

Plaintiff hereby demands a trial by jury as to all issues.

Dated: Milwaukee, Wisconsin
       July 9, 2013

                                        MAHANY & ERTL

                                        By: _/s/ Brian Mahany_____
                                        Brian H. Mahany
                                        1437 N. Prospect Avenue, Suite 200
                                        Milwaukee, Wisconsin 53202
                                        Telephone: (414) 223-0464
                                        Facsimile:  (414) 223-0472
                                        brian@mahnyertl.com

                                        Attorney for Plaintiff - Relator